## In re BAUDOUINE.

### (Circuit Court of Appeals, Second Circuit. April 3, 1900.)

### No. 121.

1. BANKRUPTCY—JURISDICTION—SUITS BY AND AGAINST TRUSTEES.

   Under Bankr. Act 1898, § 2, cl. 7, as limited by section 23b, a district court, as a court of bankruptcy, has original jurisdiction of actions by trustees in bankruptcy to recover property alleged to belong to the estate of the bankrupt, against third persons claiming title thereto adversely to the bankrupt or in hostility to the trustee, provided the cause of action is one which did not originally exist in the bankrupt himself, and also 'of all actions brought in such court against a trustee in bankruptcy by adverse claimants.

2. SAME—SUMMARY PROCEEDINGS.

   A stranger to the bankruptcy proceedings, setting up an adverse title to property which is claimed by the trustee in bankruptcy as assets of the estate, cannot be compelled to submit his claims to adjudication in a summary proceeding in the court of bankruptcy, but is entitled to be heard in a plenary suit. If the matter in controversy is of legal cognizance, he has the right to a trial by jury. If it is of equitable cognizance, it may be litigated according to the recognized processes and procedure of courts of equity.

3. SAME—WHO ARE ADVERSE CLAIMANTS.

   Where trustees under a will are directed thereby to apply the income of property to the use of the beneficiary during his life, with no direction for accumulation, and the law of the state provides that the surplus of an income so settled, beyond what is necessary for the support of the beneficiary, shall be liable in equity to the claims of his creditors; that the trust vests the whole estate, in law and in equity, in the trustees, subject only to the execution of the trust; and that no person beneficially interested in such a trust can assign or in any manner dispose of it, and the courts cannot sanction any disposition of it by the concurrence of the beneficiary and the trustee,—the testamentary trustees have a title or interest hostile to that of the trustee in bankruptcy of the beneficiary (the latter claiming the surplus income of the estate as assets in bankruptcy), such as to entitle them to be heard in opposition to such claim in a plenary suit, as distinguished from summary proceedings in the court of bankruptcy.

On Petition to Review an Order of the District Court of the United States for the Southern District of New York, in Bankruptcy.

John A. Garver, for petitioners.

Edward Van Ingen, opposed.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The trustee in bankruptcy, claiming that certain income derived by the bankrupt as the beneficiary of a trust created by will was applicable to the payment of the bankrupt's creditors, commenced a proceeding in the United States district court for the Southern district of New York, in bankruptcy, by a petition and rule to show cause against the bankrupt and the testamentary trustees, to procure an adjudication to that effect. Upon the return day of the order to show cause, the trustees under the will appeared "solely for the purpose of objecting to the jurisdiction of the court," and insisted by demurrer (1) that the court had no jurisdiction to entertain the suit; and (2) that the rights of the parties could not be determined summarily upon petition. They also insisted by demurrer that the trustee in bankruptcy did not acquire any title to the income. The court overruled the demurrers, and made an order allowing the trustees to answer within 20 days, and directing a referee in bankruptcy at the expiration of that time to take testimony, and report to the court the amount of the trust income, and what portion thereof was applicable to the claims of creditors. 96 Fed. 536. The case is now before this court upon a petition of the testamentary trustees to review the order.

The jurisdiction of the district courts, as courts of bankruptcy, to adjudicate the rights and titles of persons not parties to the bankruptcy proceeding, who claim property adversely to the bankrupt or in hostility to the trustee, if given at all, is conferred by clauses 6 and 7 of section 2 of the bankrupt act. The act does not contain any distinct provision specifically giving such jurisdiction, and in this respect differs from the act of 1867, in which (section 2) concurrent jurisdiction over such controversies was conferred on the circuit and the district courts. Section 2 of the present is measurably a substitute for section 1 of the act of 1867; and the omission of any provision similar in terms to section 2 of the earlier act is significant, and means that congress did not intend to confer the jurisdiction, or considered the terms of the present section adequate for the purpose. Section 2 invests courts of bankruptcy, within their respective territorial limits, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings. By clause 6 they are authorized to "bring in and substitute additional persons or parties in proceedings in bankruptcy when necessary for the complete determination of a matter in controversy"; and by clause 7, to "cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided."

Whether it is the meaning of these clauses to confer jurisdiction respecting the titles of those not parties to the original proceeding is a question of much difficulty, which has been decided differently by different tribunals, upon elaborate consideration. One of the most

recent judgments is In re Hammond (D. C.) 98 Fed. 845, where Judge Lowell cites all the decided cases, analyzes the various conflicting provisions of the bankrupt act bearing upon it, reviews the history of the legislation, and adverts to the impossibility of reaching a thoroughly satisfactory conclusion. A definite answer can only be given by that tribunal whose opinion is theoretically infallible, and we understand the question is before the supreme court for decision upon a certificate for instructions. Under the circumstances, an independent discussion of the subject by this court would not be profitable; and we shall content ourselves with a brief statement of our conclusions, sufficient for present purposes, and as a rule of decision in other cases now before us.

Standing alone, the language of clause 7 would seem to be sufficiently comprehensive to authorize the determination by courts of bankruptcy of every controversy relating to the estates of bankrupts. It is as broad as was the language of section 6 of the bankrupt act of 1841, which seems to have been considered by the supreme court sufficient, irrespective of section 8 of that act, to confer such jurisdiction. Ex parte Christy, 3 How. 292, 11 L. Ed. 603. Nevertheless, it is capable of a narrower construction, and can be read as extending only to controversies about property which actually belongs to the bankrupt's estate, or which arise strictly in the bankruptcy proceeding, such as those in reference to the marshaling of assets, or the extent and priority of conflicting liens. The clause must also be read with section 23, relating to the jurisdiction of the United States and state courts. Section 23, by its first clause, confers jurisdiction upon the circuit courts of all controversies at law and in equity, "as distinguished from proceedings in bankruptcy," between trustees and adverse claimants concerning the property claimed by the trustee, and, by its second clause, requires every action by a trustee to be brought in a court where the bankrupt could have brought it, unless the defendant consents to be sued elsewhere. The jurisdiction conferred by the first clause is not exclusive. That declared by the second clause doubtless refers only to such causes of action as originally existed in favor of the bankrupt, and compels a resort to the state court, unless by reason of the diversity of citizenship between the parties the bankrupt could have been sued in a federal court. Thus, by section 23, in one class of controversies the trustee may sue or be sued in the circuit court, and in another class he must sue in the state court; and the two classes embrace every controversy about property rights claimed in hostility to the title of the trustee which can arise. In view of this section, the utmost effect that can be given to clause 7 of section 2 is to authorize jurisdiction of such controversies between a trustee and an adverse claimant of the bankrupt's property as the trustee is not compelled by section 23 to bring in the state court. We think it should have that effect, not only because its language warrants it, but also because that construction is demanded by expediency and convenience. Bankruptcy courts ought, in the interests of promptitude and uniformity of decision, to have original jurisdiction to entertain and adjudicate all controversies which affect the administration of the assets in their custody. We therefore de-

cide that by clause 7 of section 2 the district court, as a court of bankruptcy, has original jurisdiction to determine all controversies brought to it by a trustee, where the cause of action did not originally exist in the bankrupt, against a person asserting a hostile title to the bankrupt's property, and also of all controversies brought to it against the trustee by an adverse claimant. This conclusion disposes of the first objection relied upon by the testamentary trustee.

In conferring such "jurisdiction at law and in equity" as will enable courts of bankruptcy to determine the controversies they are authorized to entertain, the bankrupt act does not attempt to prescribe the procedure which is to obtain when strangers to the proceeding are compelled to litigate rights or titles with the trustee. Unlike section 6 of the act of 1841, which authorized jurisdiction to be "exercised summarily in the nature of summary proceedings in equity," section 2 merely authorizes courts of bankruptcy to "make such orders" and "issue such process" as may be necessary to enforce their powers. Clause 15. In the absence of provisions to the contrary, it is to be presumed that congress intended that the ordinary procedure of courts of law or equity, according to the nature of the controversy, should be observed. As was said by the supreme court of the bankrupt act of 1867, it could not have been the intention of congress to deprive those not parties to the bankruptcy proceeding "of the usual processes of the law in defense of their rights." Under that act it was settled by the adjudications that the assignee must proceed by plenary suit, and that the courts could not compel adverse claimants to litigate their controversy by a summary proceeding. It suffices to refer to Smith v. Mason, 14 Wall. 419, 20 L. Ed. 748, and Marshall v. Knox, 16 Wall. 551, 21 L. Ed. 481. In the present act (section 19, cl. "c"), where the matters in controversy are of legal, as distinguished from equitable, cognizance, the right of the parties to a trial by jury is expressly preserved. We do not doubt that, when the matters in controversy are of equitable cognizance, they are to be litigated according to the recognized processes and procedure of courts of equity.

If the testamentary trustees had an interest adverse to the trustee in bankruptcy in the fund sought to be reached in the present case, they are entitled to be heard in a plenary suit. Doubtless, the court could have acquired jurisdiction to adjudicate the controversy without the formal process of a subpœna and a bill in equity, as the petition was in the nature of a bill in equity, and contained substantially all the matters essential to such a bill. Stickney v. Wilt, 23 Wall. 150, 23 L. Ed. 50; Milner v. Meek, 95 U. S. 252, 24 L. Ed. 444. But where the objection is taken in limine by the respondents, as it was here, it cannot be ignored, and the party who insists upon being heard in a plenary suit is entitled to that mode of procedure.

The learned judge who made the order under review proceeded upon the legal theory that the testamentary trustees had no adverse rights to the fund in controversy. This theory we cannot accept as correct. The trust created by the will was one to receive the rents and profits of lands, and apply them to the use of the beneficiary during his life, without any direction for an accumulation. By the

101 F.—37

statutes of New York it is provided that in case of such a trust the surplus of such rents and profits, beyond the sum that may be necessary for the education and support of the beneficiary, "shall be liable in equity" to the claims of his creditors "in the same manner as other personal property which cannot be reached by an execution at law"; the trust vests the whole estate, in law and in equity, in the trustee, "subject only to the execution of the trust"; and no person beneficially interested in such a trust "can assign or in any manner dispose of such interest." The courts of New York have uniformly declared nugatory every attempt by the act of the beneficiary to alienate or incumber the income arising under such a trust, or to anticipate it in any manner, and have denied the power of the courts to sanction any disposition of it by the concurrence of the beneficiary and the trustee. Graff v. Bonnett, 31 N. Y. 12; Wood v. Wood, 5 Paige, 596; Van Epps v. Van Epps, 9 Paige, 237; Cruger v. Jones, 18 Barb. 467. In Douglas v. Cruger, 80 N. Y. 19, the court of appeals said:

"The purpose of the statute was to make these trust estates and trust interests indestructible and absolutely inalienable during the existence of the trust; and, if they could be rendered alienable by the order of the court, the whole scheme of the statute would be greatly impaired, and its purpose thwarted."

To the same effect is Cuthbert v. Chauvet, 136 N. Y. 326, 32 N. E. 1088, 18 L. R. A. 745.

Such being the nature of the trust, it is obviously the right and duty of a trustee to protect the income for the use and enjoyment of the beneficiary, and to resist any attempt to divert it from the object of the testator's solicitude. He is entitled to insist that he shall not be prevented from paying it to the beneficiary and compelled to pay it to another. If the fund can be reached by the trustee in bankruptcy after it has come into the hands of the bankrupt, the testamentary trustees are not necessary parties to an action. But, if it is sought to be reached before they have discharged their fiduciary and statutory obligation towards the beneficiary, they are in duty bound to resist. In defending their trust duties they are hostile to the trustee in bankruptcy, and, if they are entitled to be heard at all, they are entitled to contest his title as fully as though they were the equitable owners of the fund. The case is distinguishable from one where the trustee in bankruptcy seeks to reach the assets in the hands of an assignee for the benefit of creditors, and we do not intend to decide that a plenary suit is always necessary in such a case. Where the assignment is without preferences, the trust being nugatory and the assignment void because in fraud of the bankrupt law, and the trustee in bankruptcy represents all parties having any real interest in the assets, it may be argued that the assignee and trustee do not stand upon hostile titles. In Re Gutwillig, 34 C. C. A. 377, 92 Fed. 337, we decided that the court of bankruptcy had power, pending a decision upon a petition against the assignor to adjudicate him a bankrupt, to restrain the assignee from disposing of the assets. We thought that power deducible from clause 3 of section 2, authorizing courts of bankruptcy to take charge of the property of bankrupts pending such a decision and

until the qualification of the trustee, and from the terms of clause 15, authorizing them to make the orders and issue the process necessary. The decision was not intended to have any wider scope.

As we are of the opinion that the order under review should be vacated, and the rights of the parties adjudicated in a plenary suit, it would be premature now to express any opinion upon the merits. The order is accordingly set aside.

LACOMBE, Circuit Judge. I concur in the conclusion that the rights of the parties must be adjusted in a plenary suit, which should be brought in the district court. I think, however, that upon the questions of law arising upon the merits, which have been fully discussed, and which will be in no wise changed by being presented in a suit in equity, the opinion of this court should be expressed for the guidance of the district court in disposing of such suit. Upon this branch of the case I concur in the careful and exhaustive opinion of the district judge.